Barry J. Kell
KELL & ASSOCIATES, P.C.
807 G Street, Suite 240
Anchorage, Alaska 99501
Phone: (907) 279-3511
Fax: (907) 279-3514

Attorneys for Plaintiff
Alaska Municipal League
Joint Insurance Association



IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

| | |
|---|---|
| ALASKA MUNICIPAL LEAGUE JOINT INSURANCE ASSOCIATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> GOVERNMENT ENTITIES MUTUAL, INC., <br><br> Defendant. | |

Case No.: 3AN-15-_____ CI

## COMPLAINT

COMES NOW plaintiff the Alaska Municipal League Joint Insurance Association, Inc. ("AMLJIA"), through its attorneys Kell & Associates, P.C., and for its Complaint against defendant Government Entities Mutual, Inc. ("GEM"), hereby states and alleges as follows:

1. The AMLJIA is a non-profit corporation organized and existing under the laws of the State of Alaska, with its principal place of business in the State of Alaska.

COMPLAINT
*AMLJIA v. GEM*, 3AN-15-_____ CI
Page 1 of 10

The AMLJIA has paid its biennial corporation taxes last due, filed its biennial report for the last reporting period, and satisfied all conditions precedent to bringing and maintaining this action.

2. The AMLJIA is a joint insurance arrangement as authorized under AS 21.76.010 *et seq.*, whose participating members have agreed to pool contributions in order to assume risks for losses to the participants on a group basis. The AMLJIA purchases excess insurance and reinsurance from various insurers to cover portions of the risk coverage it provides to its participating members.

3. GEM is a protected cell captive insurer, organized under the laws of and domiciled in the District of Columbia, with its principal place of business in the State of New Hampshire. GEM is authorized to do business in and does business in the State of Alaska.

4. This court has personal jurisdiction over the parties.

5. This court has subject matter jurisdiction over the dispute between the parties that is the subject of this Complaint.

6. Venue in this court is proper.

7. The AMLJIA provides coverage for specified risks to its participating members through the AMLJIA Participant Coverage Memorandum ("PCM"), according to the terms and conditions stated in the PCM.

8. Among the coverages available to participating members of the AMLJIA under the PCM are Workers' Compensation Coverage and Employers' Liability Coverage.

9. GEM issued a Member Reinsurance Agreement to the AMLJIA, Agreement Number GEM-3004-A10001 ("Reinsurance Agreement"), for the coverage period from July 1, 2010 through July 1, 2011. The Reinsurance Agreement provided Workers' Compensation and Employers' Liability Coverage reinsurance to the AMLJIA for that coverage period, subject to the terms and conditions contained in the Reinsurance Agreement and to applicable law. A copy of the Reinsurance Agreement is attached as Exhibit 1.

10. The City of Hoonah, Alaska ("City"), was a participating member of the AMLJIA for the PCM coverage period from July 1, 2010, through July 1, 2011. The PCM provided Workers' Compensation Coverage and Employers' Liability Coverage to the City for that coverage period.

11. On or about August 28, 2010, Matthew Tokuoka ("Tokuoka"), a police officer employed by the City, was killed while responding to the shooting of another City police officer, Anthony Wallace. The AMLJIA paid, and continues to pay, workers' compensation benefits to Tokuoka's surviving family members under the Workers' Compensation Coverage of the PCM and applicable law.

12. In August 2012, Tokuoka's survivors filed a lawsuit against the City, alleging the City negligently caused Tokuoka's death and seeking wrongful death and other damages.

13. The AMLJIA received notice of the Tokuoka lawsuit in November 2012, and provided notice of the suit to GEM in December 2012.

14. Also in December 2012, the AMJIA advised GEM of its opinion that the wrongful death claims in the Tokuoka lawsuit were covered under the Employers' Liability Coverage of the PCM, and requested that GEM confirm whether it agreed those claims were covered under the Workers' Compensation and Employers' Liability Coverage reinsurance provided under the Reinsurance Agreement.

15. By emails dated February 11, 2013, GEM advised the AMLJIA that, after consulting with its coverage attorney, it agreed with the AMLJIA's determination that the wrongful death claims against the City in the Tokuoka lawsuit were covered under the Employers' Liability Coverage of the PCM, and that the AMLJIA was required to provide a defense to the City under that coverage with respect to the wrongful death claims.

16. By email dated March 4, 2013, GEM provided a copy of its coverage attorney's written opinion regarding coverage for the wrongful death claims asserted in the Tokuoka lawsuit. That coverage opinion confirmed that the wrongful death claims were covered under the Employers' Liability Coverage, that those claims were excluded from coverage under the General Liability and Police Professional Liability Coverages

provided under the PCM, and that the AMLJIA was obligated to provide a defense to the City under the Employers' Liability Coverage with respect to those claims.

17. GEM unconditionally accepted coverage under the Workers' Compensation and Employers' Liability Coverage of the Reinsurance Agreement with respect to the wrongful death claims asserted against the City in the Tokuoka lawsuit. GEM never reserved any rights under the Reinsurance Agreement with respect to those claims.

18. Relying on GEM's acknowledgement that the wrongful death claims were covered under the Employers' Liability Coverage and that the AMLJIA owed a duty to defend under that coverage, the AMLJIA proceeded with defense of the City in the Tokuoka lawsuit under that coverage.

19. The Tokuoka lawsuit proceeded to trial in March and April, 2015. The jury ultimately returned a verdict in favor of the City.

20. The AMLJIA incurred defense expenses in excess of $500,000 in defending the City with respect to the wrongful death claims in the Tokuoka lawsuit.

21. Under the Workers' Compensation and Employers' Liability Coverage of the Reinsurance Agreement, GEM is obligated to indemnify the AMLJIA for litigation defense expenses in excess of $500,000, the AMLJIA's retained limit for purposes of that coverage.

22. On June 1, 2015, the AMLJIA sent a letter to GEM requesting reimbursement for the defense expenses in excess of the $500,000 retained limit that it incurred in defending the City against the wrongful death claims in the Tokuoka lawsuit.

23. GEM's President rejected the AMLJIA's request for reimbursement by an undated letter received by the AMLJIA on July 21, 2015, on the grounds that the claims asserted in the Tokuoka lawsuit were not covered under the Workers' Compensation and Employers' Liability Coverage of the Reinsurance Agreement.

24. At all relevant times, the AMLJIA has complied with all material requirements under the Reinsurance Agreement.

25. As a result of GEM's denial of coverage and rejection of its request for reimbursement, the AMLJIA has incurred damages in excess of $100,000.

26. Because the plaintiffs in the Tokuoka lawsuit have appealed the jury verdict and the resulting judgment to the Alaska Supreme Court, the AMLJIA is continuing to incur defense expenses subject to reimbursement under the Reinsurance Agreement and its damages recoverable against GEM continue to increase.

## COUNT I: ESTOPPEL

27. The AMLJIA incorporates by reference the allegations contained in paragraphs 1 – 26 of this Complaint.

28. GEM unconditionally accepted coverage under the Workers' Compensation and Employers' Liability Coverage of the Reinsurance Agreement with respect to the wrongful death claims asserted against the City in the Tokuoka lawsuit without any reservation of rights.

29. The AMLJIA justifiably and reasonably relied on GEM's acceptance of coverage in determining to defend and in defending the City with respect to the wrongful death claims asserted against it in the Tokuoka lawsuit.

30. GEM is estopped from denying coverage to the AMLJIA under the Workers' Compensation and Employers' Liability Coverage of the Reinsurance Agreement.

31. GEM is obligated to provide coverage to and reimburse the AMLJIA under the Workers' Compensation and Employers' Liability Coverage of the Reinsurance Agreement for all defense expenses it has incurred and will incur as the Tokuoka litigation continues.

## COUNT II: WAIVER

32. The AMLJIA incorporates by reference the allegations contained in paragraphs 1 – 31 of this Complaint.

33. GEM unconditionally accepted coverage under the Workers' Compensation and Employers' Liability Coverage of the Reinsurance Agreement with respect to the wrongful death claims asserted against the City in the Tokuoka lawsuit without any reservation of rights.

34. The AMLJIA justifiably and reasonably relied on GEM's acceptance of coverage in determining to defend and in defending the City with respect to the wrongful death claims asserted against it in the Tokuoka lawsuit.

35. GEM waived any and all defenses it may have had to coverage in favor of the AMLJIA under the Workers' Compensation and Employers' Liability Coverage of the Reinsurance Agreement regarding its defense of the City with respect to the wrongful death claims against it in the Tokuoka lawsuit.

36. GEM is obligated to provide coverage to and reimburse the AMLJIA under the Workers' Compensation and Employers' Liability Coverage of the Reinsurance Agreement for all defense expenses it has incurred and will incur as the Tokuoka litigation continues.

## COUNT III: BREACH OF CONTRACT

37. The AMLJIA incorporates by reference the allegations contained in paragraphs 1 – 36 of this Complaint.

38. GEM is contractually obligated to provide coverage to and reimburse the AMLJIA under the Workers' Compensation and Employers' Liability Coverage of the Reinsurance Agreement for all defense expenses it has incurred and will incur as the Tokuoka litigation continues.

39. GEM breached the parties' contract by denying coverage to and refusing to reimburse the AMLJIA under the Workers' Compensation and Employers' Liability Coverage of the Reinsurance Agreement for all defense expenses it has incurred and will incur as the Tokuoka litigation continues.

40. As a result of GEM's breach of the parties' contract, the AMLJIA has incurred damages in an amount in excess of $100,000.

## COUNT IV: INSURER BAD FAITH

41. The AMLJIA incorporates by reference the allegations contained in paragraphs 1 – 40 of this Complaint.

42. As its insurer, GEM owed the AMLJIA a duty of good faith grounded in the covenant of good faith and fair dealing implicit in the Reinsurance Agreement.

43. GEM breached its duty of good faith to the AMLJIA and committed the tort of insurer bad faith through its actions as set forth in this Complaint.

44. The AMLJIA is entitled to compensatory damages caused by GEM's bad faith.

45. GEM's bad faith actions were intentional, malicious, and/or reckless, entitling the AMLJIA to punitive damages against GEM.

## PRAYER FOR RELIEF

WHEREFORE, having stated its claims against defendant GEM, the AMLJIA hereby requests the following relief:

1. For judgment in its favor and against GEM on all claims;

2. For an award compensatory damages in an amount in excess of $100,000, the exact amount to be determined at trial;

3. For an award of punitive damages in an amount to be determined at trial;

4. For an award of its reasonable attorney's fees incurred in bringing this action;

5. For an award of its costs incurred in bringing this action;

6. For such other relief as the court deems fair, equitable, just, and/or reasonable.

DATED at Anchorage, Alaska this 16th day of September, 2015.

KELL & ASSOCIATES, P.C.
Attorneys for Plaintiff Alaska Municipal
League Joint Insurance Association

By: _____
Barry J. Kell
ABA No.: 8611120